IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GORDON L. ROCKHILL and NANCY ROCKHILL, husband and wife, and the marital community composed thereof; and GORDON L. ROCKHILL IRA, an individual retirement account,<br><br>   Plaintiffs,<br><br>  v.<br><br>WILLIAM W. JEUDE, an individual, And UNIVEST, INC., a Washington corporation,<br>   Respondent. | CASE NO. 2:011-cv-01308 BJR<br><br>ORDER GRANTING MOTION TO COMPEL DISCOVERY |

## I. INTRODUCTION

Plaintiffs Gordon and Nancy Rockhill move this court for an order to compel nonparty Moss Adams, LLP ("Moss Adams"), an certified public accounting firm, to comply with a *subpoena duces tecum* that Plaintiffs served on it. (Dkt. No. 70.). Moss Adams filed an opposition to the motion on July 2, 2012. (Dkt. No. 73). Plaintiffs' reply thereto was filed on July 3, 2012. (Dkt. No. 74). Having considered the parties' arguments, pleadings, and relevant case law, the court finds and rules as follows.

## II.     BACKGROUND

This case involves the sale of a security called Meridian Mortgage Investors Fund II, LLC ("MMIF II" or "the Fund"). Plaintiffs are retired septuagenarians residing in California. Defendants William Jeude and Univest, Inc. ("Univest") sold MMIF II to Plaintiffs. Mr. Jeude is a certified public accountant; he was also the 25% owner and a director of MMIF II.

Accordingly to Plaintiffs, they invested $650,000 in MMIF II over a one year period on the basis of Mr. Jeude's recommendation. (Dkt. No. 70 at 3.). MMIF II collapsed in 2010 when it was revealed as a Ponzi-scheme. *Id*. Plaintiffs initiated this action against Mr. Jeude and Univest in August 2008, alleging violations of the Securities Act of Washington, among other causes of action. (Dkt. No. 1.).

MMIF II was sold using an Offering Memorandum. The Offering Memorandum makes several references to the retention of Moss Adams to act as MMIF II's independent accountant, auditor, and annual tax preparer. (*See* Dkt. No. 71, Declaration of Lawrence R. Cock, Ex. A.). For example, the "Definitions" section states:

> "INDEPENDENT AUDITOR" means the certified public accounting firm of Moss Adams, LLP, a Washington limited liability partnership, or such other equally qualified certified public accounting firm the Company might select.

(*Id*. at Ex. A at 4.). In addition, the "Executive Summary" represented:

> **Audit and Compliance** The Company has retained Moss Adams, LLP (the "Independent Auditor") to act as its independent accountant and auditor. Pursuant to the scope of its engagement, the Independent Auditor shall audit the books and records of the Company annually and shall prepare the Company's tax return. Copies of the audited financial statements of the Company shall be delivered to the Board of the Company and, upon request, to individual Noteholders.

(*Id*. at 6.). Similarly, the "General Investment Program and Polices" section stated:

> **Audit and Compliance** The Company has retained Moss Adams, LLP (the "Independent Auditor") to act as its independent accountant and auditor. Pursuant to the scope of its engagement, the Independent Auditor shall audit the books and records of the Company annually and shall prepare the Company's tax return. Copies of the audited financial statements of the Company shall be delivered to the Board of the Company and, upon request, to individual Noteholders.

(*Id*. at 13.). Plaintiffs allege that they signed a subscription agreement in which they and MMIF II acknowledged that the Plaintiffs were relying on the representations in the Offering Memorandum and oral representations from Mr. Jeude. (*See* Dkt. No. 70 at 3 (citing Dkt. No 71 at Ex. B, ¶ 3(vi).).

Plaintiffs allege that, as early as 2003, Defendants knew that Moss Adams was not preparing audited financials for MMIF II. (Dkt. No. 70 at 3.). According to Plaintiffs, Mr. Jeude acknowledged as much in an email to Darren Berg[1] dated December 26, 2003. (Dkt. No. 71 at Ex. C at 1.). Plaintiffs assert that as a certified public accountant, Mr. Juede knew or should have know of the significance of MMIF II's failure to obtain audited financials from its independent auditor. As such, Plaintiffs contend, evidence about what services Moss Adams provided MMIF II and when it provided the services is reasonably calculated to lead to admissible evidence about what Mr. Jeude knew and when he knew it.

To that end, on March 5, 2012, Plaintiffs served Moss Adams with a subpoena to produce documents related to its services for MMIF II. (See Dkt. No. 71, Ex. D.). Exhibit A to the subpoena, which specifies what documents Plaintiffs seek from Moss Adams states, in its entirety:

> YOU ARE COMMANDED to produce the following documents:
>
> For the time period January 1, 2001 through March 1, 2009;

---

[1] Mr. Berg was the 75% owner of the Fund.

*Engagement Letters*

Signed engagement letter(s) for Meridian Mortgage Investors Fund II, LLC (hereafter "MMIF II").

Amendments to engagement letter(s) for MMIF II.

*Notification to/Communication With MMIF II*

If the scope of the engagement for MMIF II was changed, notification(s) to the client pertaining to changing the scope of the engagement for Fund II.
If the scope of the scope of the engagement for MMIF II was changed, communications with the client pertaining to changes in the scope of the engagement for MMIF II.

*Work Papers (limited time period)*

If the scope of the engagement for MMIF II was reduced, workpaper documentation supporting the decision to step down the MMIF II engagement to a lower level of service. This request is limited to the time period January 1, 2001 through one year following notification to the client of the change in the scope of the engagement.

*Internal Memos (limited time period)*

If the scope of the engagement for MMIF II was reduced, internal memos documenting the reasons the scope of the engagement was reduced. This request is limited to the time period January 1, 2001 through one year following notification to the client of the change in the scope of the engagement.

*Internal Communication (limited time period)*

If the scope of the engagement for MMIF II was reduced, internal communications documenting the reasons the scope of the engagement was reduced. This request is limited to the time period January 1, 2001 through one year following notification to the client of the change in the scope of the engagement.

(Dkt. No. 71, Ex. D at Ex. A.).

On March 28, 2012, counsel for Moss Adams filed written objections to the subpoena, asserting that the requests were irrelevant, overly broad, or unduly burdensome. (Dkt. No. 71, Ex. E.). The parties conferred and on June 20, 2012, Moss Adams produced all audit-related

documents from MMIF II that are responsive to the subpoena. (See Dkt. No. 73 at 3.). However, Moss Adams refuses to produce any "tax-related documents," citing 26 U.S.C. § 7216 or 26 C.F.R. 301.7216-1. (Dkt. No. 71, Ex. H.). Plaintiffs filed the present motion on June 21, 2012. (Dkt. No. 70.).

### III.     DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure states, in relevant part:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action…. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The scope of discovery is broad and encompasses any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). A district court has wide latitude in controlling discovery. *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006) ("[d]istrict courts have wide latitude in controlling discovery, and [their] rulings will not be overturned in the absence of a clear abuse of discretion.") (internal quotation marks and citation omitted). Federal Rule 37(a)(2)(B), allows the discovering party to move for an order compelling a response to a discovery request. Fed. R. Civ. Pro. 37(a)(2)(B). A court should deny a motion to compel if the information requested falls outside the scope of discovery. *See Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.*, 981 F.2d 429, 438–39 (9th Cir. 1992), *cert. denied*, 508 U.S. 908, 113 (1993). On the other hand, a motion to compel "should be granted if the [documents requested] are relevant…." *Ordaz v. Tate*, 2009 WL 89193, \*2 (citing Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure § 2286* (1994).).

Plaintiffs have sued Defendants under the Securities Act of Washington. Pursuant to § 21.20.430(3) of the Act, a director is liable for an issuer's sale of a security unless the director can establish that he did not know and could not have known of a material representation or omission. RCW 21.20.430(3). As such, Plaintiffs argue, evidence about what services Moss Adams provided MMIF II and when it provided such services is reasonably calculated to lead to admissible evidenced about what Mr. Jeude, as a 25% owner and director of MMIF II, knew and when he knew it. Specifically, Plaintiffs claim that the MMIF II's tax returns, documents relating to the preparation of the tax returns, and working papers will show the income being reported by the Fund, questions raised by the tax preparers, and answers provided by MMIF II. Plaintiffs assert that such information is relevant to whether Mr. Jeude knew or should have known whether the representations made in the Offering Memorandum regarding Moss Adams were true. In other words, Plaintiffs argue, if the evidence establishes that Moss Adams raised questions about the books and records of MMIF II and Mr. Jeude knew or could have known about it, that evidence will support Plaintiffs' securities fraud allegations.

Moss Adams raises several objections to the subpoena. First, it contends that Plaintiffs' complaint raises allegations of misrepresentation related to the completion of audits, not tax-related allegations. According to Moss Adams, there is no identification in the complaint or instant motion of any alleged reliance on misrepresentations by Defendants regarding the filing of tax returns or tax-related matters. Therefore, Moss Adams argues, Plaintiffs have not shown that the tax-related documents are relevant. Second, it asserts that it has already produced all audit-related documents for MMIF II that are responsive to Plaintiffs' subpoena. Third, Moss Adams argues that the subpoena does not contain a request for "tax-related documents." Instead, the requests are limited to "audit-related" documents pertaining to engagement agreements and

any changes in the scope of those agreements. Furthermore, Moss Adams avers, even if the subpoena did request tax-related documents, Federal Statute and Regulations 26 U.S.C. § 7216 and 26 C.F.R. § 301.726 prohibit Moss Adams from disclosing such information absent an order of the court upon a showing of relevance and compelling need, a showing, Moss Adams argues, that Plaintiffs cannot make.

Plaintiffs counter that the subpoena makes no distinction between "audit-related" and "tax-related" documents; rather, the subpoena seeks communications, work papers, and internal memorandum related to any "engagement" of Moss Adams by MMIF II. In other words, Plaintiffs argue, the subpoena seeks documents and testimony related to both the purported and actual services that Moss Adams was engaged to perform, regardless of whether those services were audit-related, tax-related, or otherwise. Furthermore, Plaintiffs counter, the tax-related documents are clearly relevant to Plaintiffs' claim that Mr. Jeude, a certified public accountant and part owner/director of MMIF II, ignored numerous red flags regarding the Fund and/or failed to disclose those red flags to potential investors.

Plaintiffs' argument is persuasive. Despite Moss Adam's argument to the contrary, the subpoena does not distinguish between "audit-related" and "tax-related" documents. The subpoena unequivocally seeks production of all engagement letters, notifications and communications with MMIF II, work papers, internal memos and internal communications related to Moss Adams' engagement with the Fund.

Next, the court turns to the question of whether the requested documents are relevant to Plaintiffs' claims and whether they have a compelling interest in obtaining the documents. "Tax returns do not enjoy an absolute privilege from discovery" in the Ninth Circuit. *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975). Tax returns are subject to

discovery if they are relevant and there is a compelling need for the returns because their information is not otherwise readily attainable from an alternative source. *See Hackett v. Feedey*, 2011 WL 4433663, *4 (D.Nev. Sept. 22, 2011) (citing *Ullmann v. Hartford Fire Ins. Co.*, 87 N.J. Super 409, 415–16 (App. Div. 1965)). The party seeking discovery has the burden of showing relevancy, while the party resisting discovery has the burden of identifying the alternative source of information. *Terwilliger v. York Int'l*, 176 F.R.D. 214, 218 (W.D. Va. 1997).

The court notes that Defendants have not raised any privacy concerns or otherwise objected to the production of the documents.[2] Plaintiffs have alleged generally that Mr. Jeude, as both an owner and director, failed to adequately investigate, evaluate, or monitor MMIF II before recommending it to his clients. Therefore, the tax-related documents are certainly relevant to the subject matter of the instant action. Second, Plaintiffs have a compelling need for the tax-related documents because they have not been able to obtain the documents through another source. Mr. Berg is in prison, MMIF II no longer exists, and Mr. Jeude alleges that he does not have "any "Moss Adams' documents." (Dkt. No. 74 at 3.). In addition, the requests are limited temporally: they are restricted to the time period of January 1, 2001 through one year following notification to the client of the change in the scope of the engagement. Moss Adams does not show why such stale information should not be produced.

## IV. CONCLUSION

Based on the foregoing, the court HEREBY:

1. GRANTS Plaintiffs' Motion to Compel against nonparty Moss Adams, and

2. IT IS FURTHER ORDERED that Moss Adams shall produce within ten (10) days of this Order, all engagement letters, notifications and communications, work papers, internal

---

[2] Indeed, the Fund has been in bankruptcy since 2010 and Mr. Berg, its 75% owner, is currently serving an 18-year sentence in federal prison after pleading guilty to money laundering and wire fraud.

memos, and internal communications, related to its engagement with MMIF II—audit and/or tax related—subject to the time limitations specified in the subpoena.

DATED this 18th day of July, 2012.

Barbara Jacobs Rothstein
U.S. District Court Judge