UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GORDON L. ROCKHILL,<br>NANCY ROCKHILL,<br>GORDON L. ROCKHILL IRA<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>WILLIAM M. JEUDE & UNIVEST, INC.,<br><br>　　　　Defendants. | Civil Action No. 11-1308 (BJR)<br><br>MEMORANDUM OPINION |

## I.  INTRODUCTION

Plaintiffs, Gordon L. Rockhill, individually and through his individual retirement account ("IRA"), and his spouse, Nancy Rockhill (collectively, "Plaintiffs"), bring suit against Univest, Inc. and its principal, William W. Jeude (collectively, "Defendants"). Plaintiffs seek to recover the losses resulting from their investments in Meridian Mortgage Investors Fund II, LLC ("MMIF II"), a mortgage-backed securities fund that ultimately proved to be a Ponzi scheme.

While Plaintiffs' case was pending before this Court, MMIF II, as part of a larger umbrella fund - Meridian Mortgage Investment Funds ("Meridian Funds"), filed for bankruptcy. A liquidating trustee was appointed to administer Meridian Funds' assets ("Trustee"). Individuals who had invested in MMIF II (and were therefore creditors in the bankruptcy proceeding) were given the option of assigning their rights to pursue certain causes of action against Meridian Funds. Plaintiffs agreed to assign these claims (referred to as the "non-estate claims" by the bankruptcy reorganization plan).

Defendants now move for summary judgment, arguing that the claims currently before this Court are "non-estate claims." Therefore, Defendants contend, Plaintiffs' claims have been assigned to the Trustee and Plaintiffs lack standing to pursue this action. As elaborated below, the Court is persuaded that Counts 1 through 5 qualify as non-estate claims and therefore grants summary judgment to Defendants as to those claims. However, the Court denies Defendants summary judgment as to Counts 6 through 9 because, at a minimum, a material dispute of fact remains as to whether those claims are non-estate claims.

## II.  LEGAL STANDARDS

### A.  Legal Standard for Summary Judgment

A motion for summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable [finder of fact] could return a verdict" for either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is "material" if it could reasonably affect the outcome of the case. *Id.*

In ruling on a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party. *Id*. at 255. Where the movant does not bear the ultimate burden at trial, it need only satisfy the initial burden of demonstrating the absence of evidence to support the nonmovant's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the motion has been properly supported, the burden shifts to the nonmovant to show that "the evidence is such that a reasonable [finder of fact] could return a verdict" in its favor. *Anderson*, 477 U.S. at 248.

Finally, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248-50 (noting that if the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted).

### 2. Legal Standard – Standing

If Plaintiffs' claims have been assigned, then Plaintiffs have relinquished their right to sue and this Court no longer has jurisdiction over those claims. *Hsu v. Allianz Life Ins. Co.*, No. 97-56048, 1999 U.S. App. LEXIS 2630, at *3-4 (9th Cir. Feb. 18, 1999). Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies. U.S. CONST. art. III, § 2, cl. 1. As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing. *Native Village of Kivalina v. ExxonMobil Corp.*, No. 09-17490, 2012 U.S. App. LEXIS 19870, at *47 (9th Cir. Sept. 21, 2012). That said, "[w]hen a district court determines standing on summary judgment (as is the case here), [the court] must determine [], viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact . . . ." *Crayton v. Concord EFS, Inc. (In re ATM Fee Antitrust Litig.)*, 686 F.3d 741, 748 (9th Cir. 2012). If such a genuine issue of material fact exists, then summary judgment is inappropriate. *Id.* (noting that the district court must resolve the factual dispute prior to making a decision on standing if a material dispute of fact exists).

### III. BACKGROUND[1]

#### A. Plaintiffs' Investments

In late 2006, the Rockhills were seeking investment opportunities after receiving $600,000 from the sale of a property. Pls.' Opp'n at 2. On a friend's suggestion, Mr. Rockhill,

---

[1] For purposes of this opinion, the Court presumes the facts alleged by Plaintiffs (the nonmoving parties) are true, unless otherwise indicated.

who lives in California, telephoned Defendant Jeude in Washington to speak to him about investment opportunities. *Id.* According to Plaintiffs, Defendant Jeude immediately told Mr. Rockhill that MMIF II would be a "perfect investment" for the Rockhills. Gordon Rockhill Decl., ECF No. 30, ¶¶ 10-12. MMIF II was one of several Meridian Funds controlled by Frederick Darren Berg. Compl. ¶ 2.6. Defendant Jeude made no other suggestions about what Mr. Rockhill "could, or should, do with the money." Gordon Rockhill Decl., ECF No. 30, ¶¶ 10-12.

Defendant Jeude gave Mr. Rockhill materials about MMIF II to review. This material stated that the "exclusive placement agent" for MMIF II was Univest, a firm licensed as a broker-dealer in the State of Washington. *Id.*, Ex. 1 at 2; Jeude Decl., ECF No. 66, Ex. 2. Any interested investors were instructed to contact Defendant Jeude, the sole registered representative of Univest. *Id.*

By way of background, Univest and MMIF II executed a "selling agreement" in 2001, whereby MMIF II agreed that Univest would serve as its "exclusive placement agent." Jeude Decl., ECF No. 66, Ex. 1. In this role Univest's primary duties included "soliciting and procuring business relationships and individual investors for MMIF II." *Id.* As compensation for Univest's services, MMIF II agreed to pay Univest 1.5% of all investment amounts received as a result of Univest's solicitation and procurement efforts. *Id.*

In January 2007, Mr. Rockhill decided to invest $500,000 in MMIF II. Pls.' Opp'n at 2. In memorializing this arrangement, Mr. Rockhill wrote a letter to MMIF II stating that he had "been counseling with Bill Jeude for some while concerning this investment and it is on his advice that [he took] this step." *Id.* at 3. Defendant Jeude struck Mr. Rockhill as "somebody who knew a great deal about Meridian." Gordon Rockhill Decl., ECF No. 30, ¶ 11.

4

Several months later, Mr. Rockhill wanted advice as to what to do with $400,000 from his IRA and he called Defendant Jeude, believing that Defendant Jeude was "knowledgeable and would again look out for [Mr. Rockhill's] best interest." *Id.* ¶ 16.  Upon Defendant Jeude's advice, Mr. Rockhill ended up hiring Viking Bank to manage his IRA.  *Id.*  Further, Mr. Rockhill claims he relied on Defendant Jeude's advice to invest $250,000 from the IRA in a real estate venture.  Finally, in early 2008, Mr. Rockhill again sought Defendant Juede's counsel when he inquired whether he should invest an additional $150,000, the remaining balance of his IRA, in MMIF II.  *Id.* ¶ 19.  According to Plaintiff Rockhill, "[a]fter getting Mr. Jeude's reassurance, [he] made the second $150,000 investment in Meridian in February 2008."  *Id.*

Ultimately, it was discovered that Frederick Darren Berg, who controlled Meridian Funds, was operating a Ponzi scheme.  Berg was indicted and pled guilty to charges of wire fraud, money laundering, and bankruptcy fraud.  Compl. ¶ 2.110.  Plaintiffs claim to have lost the principal amount of their $650,000 investment.  Gordon Rockhill Decl., ECF No. 30, ¶ 22.

### B.  Plaintiffs' Claims

Plaintiffs commenced this suit in August 2011, seeking to recover their losses.  *See generally* Compl.  As described below, Plaintiffs bring nine claims against Defendants.  The first five counts arise under the Securities Act of Washington, RCW 21.20.010 (herein, "Securities Act claims"), whereas Counts 6 through 9 are common law claims ("common law claims").

Count 1:  Direct Liability Under the Securities Act.  Plaintiffs charge that Defendants are directly liable for violations of the Securities Act of Washington, which states:

> It is unlawful for any person, in connection with the purchase or sale of a security, directly or indirectly, to employ any device, scheme or artifice to defraud; to make any untrue statement of a material fact or to omit a state of material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any act, practice, or

course of business which operates or would operate as a fraud or deceit upon any person.

According to Plaintiffs, Defendants Jeude and Univest were both considered a "seller" of MMIF II and substantially contributed to the sale of MMIF II securities to the Rockhills in 2007 and 2008. Compl. ¶¶ 3.1-3.316. By making material misrepresentations and omitting material information that Plaintiffs relied on, Defendants allegedly violated the Securities Act of Washington. *Id.* ¶ 3.13.

Counts 2 & 3: Secondary Liability Under the Securities Act. Plaintiffs charge that under the Securities Act of Washington, Defendants Univest and Jeude acted as a broker-dealer and salesperson, respectively, and materially aided in the sale of MMIF II to Plaintiffs. Therefore, Plaintiffs conclude that Defendants should be held "liable jointly and severally with and to the same extent as the seller," assuming the "seller" is Berg/MMIF II. *Id.* ¶¶ 3.26-3.27; 3.37-3.42.

Count 4: Secondary Liability Under the Securities Act. Plaintiffs claim that Defendant Jeude should be held liable for Univest's actions and omissions because Defendant Jeude knew or should have known about Univest's misrepresentations and omissions. In making this charge, Plaintiffs restate that Univest was a "seller" of securities and a "substantial contributive factor" to the sale of MMIF II. According to Plaintiffs, Defendant Jeude, as an officer and director of Univest, was in control over Univest when it materially aided in the sale of securities by MMIF II to the Rockhills, a transaction that violated the Securities Act of Washington. *Id.* ¶¶ 3.47-3.62.

Count 5: Selling Securities Without Registration. Plaintiffs charge that during the 2008 sale of securities to the Rockhills, Jeude and Univest were not registered to sell securities, as required by the Securities Act of Washington and California law. *Id.* ¶¶ 3.63-3.71.

Count 6: Negligence.  Plaintiffs allege that Juede owed them "a duty of care to give investment advice to his clients consistent with the standard applicable to registered representatives in the Seattle-Tacoma, Washington metropolitan area."  According to Plaintiffs, Jeude breached that duty by (1) failing to perform due diligence prior to making investment recommendations to the Rockhills, (2) allowing his registrations to expire, (3) recommending that the Rockhills invest their "liquid net worth and total net worth in investments in real estate," (4) recommending that the Rockhills invest their "liquid net worth [in] one illiquid securities," and (5) recommending "a strategy that was unsuitable for two retirees because the strategy was non-diversified, over-concentrated, and illiquid."  Univest, Plaintiffs claim, was vicariously liable for Jeude's negligence.  *Id.* ¶¶ 3.72-3.80.

Count 7 & 8: Negligent Misrepresentation by Defendant Jeude.  Plaintiffs assert that Defendant Jeude and Univest are "in the business and profession of giving information for the guidance of others in various business transactions, including, without limitation, the potential purchasers of securities."  Plaintiffs claim that Defendants made and adopted false and misleading written representations regarding Berg, MMIF II, and the independent auditing of MMIF II.  Similarly, Plaintiffs allege that Defendants failed to disclose material information in the course of their business, such as Berg's prior bankruptcy history and criminal history.  Plaintiffs claim that Defendants were "negligent in obtaining or communicating the false information to the Rockhills."  *Id.* ¶¶ 3.81-3.121.

Count 9: Breach of Fiduciary Duty.  Plaintiffs charge that Defendants advised the Rockhills on investments and are therefore Plaintiffs' fiduciaries.  Plaintiffs further allege that Defendants breached their fiduciary duty to the Rockhills by failing to make full disclosure of

7

material facts and by making misrepresentations that affected their investment decisions.  *Id.* ¶¶ 3.122-3.137.

### C.  Plaintiffs' Assignment of "Non-Estate Claims"

In June 2010, MMIF II filed for bankruptcy and a liquidating trustee was assigned to administer its assets.  Compl. ¶ 2.108; Crichton Decl., ECF No. 65, Ex. 2.  A year later, in June 2011, the United States Bankruptcy Court for the Western District of Washington confirmed a liquidation plan ("the Plan") for MMIF II that gave investors the option of assigning to the Trustee the right to pursue certain "Non-Estate Claims" against MMIF II and related entities.  Crichton Decl., ECF No. 65, Ex. 2.  In return for the assignment of the Non-Estate Claims, the assignor-investors would receive an "enhanced distribution from the Trust derived from the proceeds of Non-Estate Claims that are pursued by the Trustee."  *Id.*  Conversely, "[a]ny investor who has not affirmatively assigned its Non-Estate Claims to the Trustee [would] not share in distributions derived from any recoveries" related to litigating those Non-Estate Claims.  *Id.*

Initially, Plaintiffs declined the trustee's solicitation to assign Non-Estate Claims.  Pls.' Opp'n at 4.  However, on March 14, 2012, months after the instant case had been filed, Plaintiffs executed an assignment.  *Id.*

The assignment states in relevant part:

> I HEREBY ASSIGN TO THE LIQUIDATING TRUST ALL OF MY NON-ESTATE CLAIMS, AS THAT TERM IS USED IN THE CONFIRMED CHAPTER 11 PLAN OF THE MERIDIAN FUNDS, AND DESIGNATE THE LIQUIDATING TRUSTEE AS THE AUTHORIZED AGENT FOR PURSUIT OF SUCH CLAIMS.

Crichton Decl., ECF No. 65, Ex. 2.

The Plan, in turn, defines a Non-Estate Claim as follows:

> Any cause of action held by individual Investors arising from any matter regarding the Debtors, together with the right to opt out of any class action

8

>whether or not certified (excluding contract claims against third parties that are specific to an individual Investor and not shared by Investors generally), but including without limitation, causes of action against (i) current and former managers or employees of the Debtors; (ii) all Persons that entered into transactions with the Debtors; (iii) all Persons that provided services to the Debtors, including, without limitation, the Debtors' attorneys, accountants, auditors, bankers and financial advisors; (iv) Berg; and (v) the Berg Entities. *Non Estate Claims* do not include claims or causes of action against financial advisors retained by the individual investors.

*Id.* ¶ 68. "Persons" includes corporations and business entities. *Id.* ¶ 73.

In May 2012, Defendants moved for summary judgment, arguing that Plaintiffs had assigned the right to bring the claims presented before this Court. *See generally* Def.'s Mot. Plaintiffs do not dispute their assignment of Non-Estate Claims. Instead, Plaintiffs argue that the claims in this action are exempt from the definition of a Non-Estate Claim (and therefore were not assigned) because the claims are brought against their retained financial advisors, Defendant Jeude and Univest. *See generally* Pls.' Opp'n. With Defendants' motion for summary judgment ripe for consideration, the Court turns to consider the parties' arguments and the applicable legal standards.

## IV. ANALYSIS

### A. Standing: Definition of Financial Advisor

It is undisputed that Plaintiffs assigned all of their Non-Estate Claims to the Trustee. The only disagreement here is whether each of Plaintiffs' claims against Defendants Univest and Jeude is a Non-Estate Claim. Two clauses in the definition of a Non-Estate Claim are relevant. The first relevant clause explains that Plaintiffs have assigned their rights to

>**Any cause of action . . . arising from any matter regarding [Meridian Funds], . . . including without limitation, causes of action against . . . (iii) <u>all</u> Persons that provided services to the Debtors, including, without limitation, the Debtors' attorneys, accountants, auditors, bankers and financial advisors. . . .**

Crichton Decl., ECF No. 65, Ex. 2 ¶ 68.  As elaborated below, there is no question that Defendants were providing a service to MMIF II as their exclusive placement agents.  The second relevant clause of the definition of Non Estate Claims states:

> **Non Estate Claims do not include claims or causes of action against financial advisors retained by the individual investors.**

*Id*.  Thus, the key matter before this Court is the definition of a "financial advisor," as that term is used in the assignment and the Plan's definition of Non-Estate Claims.

Defendants argue that all of Plaintiffs claims "relate to Univest and its agent Jeude providing services to MMIF II" and therefore "fall squarely within the scope of the Assignment." Def.'s Mot. at 10.   Plaintiffs argue that their claims did not constitute Non-Estate Claims because Defendants Univest and Jeude acted as Plaintiffs' financial advisors.  Pls.' Opp'n at 4.  Because the term "financial advisor" is not defined by the Plan, Plaintiffs ask the Court to apply a plain language definition and define the term as a professional employed by an individual to help that individual manage his or her finances by, among other things, providing investment advice.  Pls.' Opp'n at 6-7.

Defendants counter that they were not acting as Plaintiffs' financial advisors, but rather as a broker-dealer when they sold MMIF II securities to Plaintiffs.  Defendants argue that the Court should apply the definition for financial advisor that is found in the Securities Act of Washington, which excludes from the definition of a financial advisor a broker-dealer who gives investment advice incidental to his services as a broker-dealer and receives no special compensation for that advice.  Defs.' Reply at 2-3.

The rules of contract interpretation guide the Court in determining the definition of a "financial advisor" incorporated into the Plan and the assignment.  *See Hexcel Corp. v. Hexcel*

*Corp.*, No. 97-15175, 1998 U.S. App. LEXIS 576 (9th Cir. 1998) (applying contract law to analyze an assignment provision that was part of a settlement agreement). Because the Plan and the relevant assignment provision were written with individual investors of MMIF II in mind, the Court is persuaded that "financial advisor" meant whatever that term means in the field of financial investing. As such, the Court adopts the technical definition for the term "financial advisor" found in Barron's Finance and Investment Handbook and cited by Plaintiffs.[2] *Berg v. Hudesman*, 801 P.2d 222, 230 (Wash. 1990) (explaining that when a technical term is used in a contract "the general rule is that such language is to be given its technical meaning when used in a transaction within its technical field"). Under that definition, financial adviser means a "Professional adviser offering financial counsel. Some financial advisers charge a fee and earn commissions on the products they recommend to implement their advice. Other advisers only charge fees, and do not sell products or accept commissions." *See* Pls.' Opp'n at 6. Thus, in adopting this definition, the Court agrees with Plaintiffs that a financial adviser may collect commissions from the products that they recommend (as opposed to collecting a direct fee from a client).

The Court rejects Defendants' contention that the term financial adviser should be defined according to the Securities Act of Washington. First, it is likely that the Trustee meant to apply the term financial advisor as that term is commonly used in the field of financial investing, and not the specific definition incorporated in the Securities Act of Washington. Even assuming, however, that the Trustee did mean the Securities Act definition to apply, the Court still finds that the definition of financial advisor as used in the field of financial investing should

---

[2] The Court is further persuaded that the definition for financial advisor provided in Barron's Handbook is one that a lay person with a common understanding of financial investing background would apply.

apply.  When contractual parties attach different meanings to certain terms used, the Court must turn for guidance to the Restatement (Second) of Contracts § 201.  *Berg v. Hudesman*, 115 Wn.2d 657, 669 (Wash. 1990).  Section 201, in turn, states that "[w]here the parties have attached different meanings to [a contractual term], it is interpreted in accordance with the meaning attached by one of them if at the time the agreement was made . . . that party had no reason to know of any different meaning attached by the other, and the other had reason to know the meaning attached by the first party."  *See* Restatement (Second) of Contracts § 201 (1981).  Plaintiffs had no reason to know that the definition of financial advisor found in the Securities Act of Washington would apply to defining a Non-Estate Claim in the Plan.  The Trustee, on the other hand, should have known of the technical definition of financial advisor as used in the field of financial investing.  Accordingly, the Court declines to use the definition of financial advisor found in the Securities Act of Washington.

With this definition of financial advisor in mind, the Court turns below to consider which of Plaintiffs' claims is brought against Defendants in their role as a financial advisor retained by Plaintiffs.

### B.  Standing: Securities Claims, Counts 1 through 5

Plaintiffs' first five counts charge Defendants with violating the Securities Act of Washington and focus on Defendants' actions as the exclusive placement agent for MMIF II.  *See supra* Part III.B.  These counts reflect the fact that Defendants executed a contract with MMIF II to serve as its exclusive placement agent, and that Defendants expected to receive a commission from MMIF II in exchange for their "placement" services.  Jeude Decl., ECF No. 66, Ex. 1; Compl. ¶ 2.5.  *Id.*  In other words, Defendants Univest and Jeude provided a service to Meridian Funds and MMIF II.  According to the Plan and the assignment, Non Estate Claims

include "[a]ny cause of action . . . arising from any matter regarding [Meridian Funds], . . . including without limitation, causes of action against . . . (iii) <u>all Persons that provided services to the Debtors</u>." *See* Crichton Decl., ECF No. 65, Ex. 2 ¶ 68 (emphasis added). Because Counts 1 through 5 arise from Defendants' services to MMIF, those claims were assigned.

Plaintiffs' argument that their claims have not been assigned because Defendants acted as their financial advisors is not persuasive as to Counts 1 through 5. Plaintiffs' allegations throughout Counts 1 through 5 contemplate that Defendants were acting as MMIF II's exclusive placement agent and not as Plaintiffs' financial advisors. The underlying facts are not in dispute regarding the assignment of Counts 1 through 5. Because Plaintiffs assigned these claims, they have no standing to pursue Counts 1 through 5 in this Court. Accordingly, the Court lacks jurisdiction over Counts 1 through 5 and grants summary judgment to Defendants as to these claims. *See Hsu v. Allianz Life Ins. Co.*, No. 97-56048, 1999 U.S. App. LEXIS 2630, at *3-4 (9th Cir. Feb. 18, 1999) (a plaintiff lacks standing if he assigned his right to sue to someone else).

### C.  Standing: Common Law Claims, Counts 6 through 9

In contrast to the Securities Claims, Counts 6 through 9 allege common law tort claims against Defendants in their roles, not as sellers, but arguably as Plaintiffs' retained financial advisors. For instance, Count 6 charges that Defendants owed Plaintiffs "a duty of care to give investment advice . . . consistent with the standard applicable to registered representatives in the Seattle-Tacoma, Washington metropolitan area." Plaintiffs further claim that Defendants breached that duty by making inappropriate and bad recommendations with respect to Plaintiffs' investments. Similarly, Counts 7 and 8 allege that Defendants were in the business of "giving information for the guidance of others in various business transactions, including, without

limitation, the potential purchasers of securities," and that Defendants, while executing their services, negligent misrepresented information to Plaintiffs.  Finally, Count 9 alleges that Defendants, in advising Plaintiffs on their investments, failed to disclose material facts and made misrepresentations, thereby breaching their fiduciary duty.  In sum, Counts 6 through 9 seek to hold Defendants liable for their actions in rendering financial counsel.

Plaintiffs have provided sufficient facts to raise a genuine dispute as to whether Defendants acted as their retained financial advisors.  Plaintiffs claim that in addition to selling them MMIF II securities, Defendant Jeude persuaded Mr. Rockhill to invest $250,000 in real estate development in downtown Seattle.  Pls.' Opp'n at 3.  Plaintiffs also allege that Defendant Jeude counseled Mr. Rockhill as to whether he should invest part of his IRA in MMIF II and recommended that Mr. Rockhill use Viking Bank to serve as the custodian of his IRA.  *Id.*  Moreover, Mr. Rockhill specifically noted that he was relying on Defendants financial counsel when he decided to invest the initial $500,000 in MMIF II.  *Id.*

Insofar as Plaintiffs' suit is based on the Defendants' actions in providing financial advice and recommendations (as opposed to Defendants' actions as MMIF II's exclusive placement agent), the Court cannot state with certainty that those claims were assigned.  At a minimum, Plaintiffs' proffered evidence demonstrates that there is a dispute of material fact as to whether Defendants acted as Plaintiffs' financial advisors.  Thus, it is also an unsettled question whether this Court retains jurisdiction over Counts 6 through 9, and the Court denies summary judgment to Defendants as to those claims.

## V.  CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion for summary judgment.  Insofar as the motion is denied, the Court grants Defendants' alternative motion to amend the Answer.  The Amended Answer is due within one week of this issuance of this opinion.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this same day.

October 15, 2012

*Barbara J. Rothstein*

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE