UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GORDON L. ROCKHILL and NANCY )
ROCKHILL, husband and wife, and the )
Marital community composed thereof; )
and GORDON L. ROCKHILL IRA, an )
individual retirement account, )
                                             )
        *Plaintiff*s, )    CASE NO.    CV11-1308 BJR
                                   )
        v. )    FINDINGS OF FACT AND
                                   )    CONCLUSIONS OF LAW
                                   )
WILLIAM W. JEUDE, )
an individual, and UNIVEST, INC., )
a Washington corporation, )
                                   )
        *Defendants*. )
_____ )

A bench trial was held in the above-captioned case on November 6 through 9, 2012. Defendants William W. Jeude ("Jeude") and Univest, Inc. ("Univest") submitted proposed findings of fact and conclusions of law. (Dkt. No. 138). Plaintiffs, Gordon L. Rockhill, as an individual and through his individual retirement account ("Rockhill"), and his spouse, Nancy Rockhill (collectively "Plaintiffs" or "the Rockhills") submitted alternate proposed findings of fact and conclusions of law. (Dkt. No. 141).

The Rockhills commenced this action to recover losses they suffered due to their investment in the Meridian Mortgage Investors Fund II, LLC ("MMIF II"). The claims presented at trial for adjudication were as follows:

    A.  Negligent investment advice;

    B.  Negligent misrepresentation; and

    C.  Breach of fiduciary duty.

The following witnesses were called and testified at the trial:

    A.  Plaintiffs' witnesses:

        1.  William Jeude

        2.  Fergus Henehan

        3.  Gordon Rockhill

    B.  Defendants' Witnesses:

        1.  Derek Crump

        2.  Jennifer Hill

The parties stipulated to a number of facts, which the Court reviewed. Plaintiffs submitted designations of portions of Jeude's deposition testimony and Defendants submitted designations of portions of David Sengstock's deposition testimony, all of which the Court reviewed. In addition, the Court has reviewed and considered all exhibits admitted into evidence. Based on the evidence presented at trial, the Court makes the following finds of fact and conclusions of law:

**I.    FINDINGS OF FACT**

1.    Univest is a Washington corporation, formed in 1988.

2. Univest was registered as a broker/deal with the National Association of Securities Dealers ("NASD") and its successor, the Financial Industry Regulatory Authority ("FINRA"), from 2000 through December 13, 2007.

3. Univest also registered as a broker/dealer with the Washington State Department of Financial Institutions ("DFI") on December 12, 2006.

4. Jeude was registered with DFI as a Non-FINRA Broker-Dealer Representative on December 12, 2006.

5. At all times relevant hereto, Jeude was held out as, and was in fact, Univest's President. All of Jeude's dealings with the Rockhills were in Jeude's capacity as a registered representative of Univest.

6. MMIF II was a mortgage-backed securities fund. It was part of the family of Meridian Mortgage Investment Funds controlled by Frederick Darren Berg.

7. On June 1, 2001, MMIF II and Univest entered into a Selling Agreement whereby MMIF II retained Univest as its exclusive placement agent in connection with the offering of the MMIF II securities. The Selling Agreement describes Univest's duties as follows: "Univest's primary duties shall include soliciting and procuring business relationships and individual investors for MMIF II." (*See* Plaintiffs' Ex. 26 at § 2).

8. MMIF II paid Univest a 1.5% sales commission as its compensation for services rendered under the Selling Agreement.

9. Univest did not solicit investors outside the State of Washington.

10. Rockhill was personally responsible for the Rockhills' investment decisions.

11. Rockhill initiated contact with Univest's offices in Washington by a telephone call.

12. Prior to investing in MMIF II, Rockhill received the MMIF Private Placement Memorandum. Rockhill did not read the Memorandum in its entirety.

13. The Rockhills made two investments in MMIF II. The first investment, $500,000, was made on January 18, 2007. In February 2008, Rockhill decided to invest another $150,000 in MMIF II through a separate individual retirement account ("IRA") with Viking Retirement Assets, a part of Viking Bank, as custodian. The remainder of the IRA was invested in a separate real estate partnership involved in the operation of a hotel.

14. In investing in MMIF II, Rockhill was prepared to invest in a speculative investment and to accept a higher degree of risk.

15. The Rockhills' MMIF II investments were made pursuant to subscription agreements entered into directly with MMIF II.

16. The MMIF II investments were in the form of promissory notes that were renewable annually.

17. The Rockhills annually renewed their investments in MMIF II through 2010.

18. Before making at least one of the renewals, Rockhill reached out to Jeude to ask him what he thought of the MMIF II investment in light of the troubled United States' housing market. Jeude told Rockhill that he thought the MMIF II investments remained good investments because the fund was able to take advantage of distressed properties.

19. Jeude had invested approximately $1,000,000 of his personal savings in Meridian Mortgage Investment Funds.

20. In July 2010, MMIF II, together with all of the other Meridian Mortgage Investment Funds, filed for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Washington, and those cases were consolidated.

21. A liquidating trustee was appointed on behalf of the Meridian funds, including MMIF II, on July 20, 2010 (the "Trustee").

22. Under the Meridian reorganization plan, individuals who had invested in MMIF II were given the option of assigning to the Trustee their rights to pursue certain causes of action against MMIF II, referred to as "Non-Estate Claims" by the bankruptcy reorganization plan.

23. In return for the assignment of the Non-Estate Claims, the assignor-investors would receive an 'enhanced distribution from the Trust derived from the proceeds of Non-Estate Claims that are pursued by the Trustee." Conversely, '[a]ny investor who has not affirmatively assigned its Non-Estate Claims to the Trustee [would] not share in distribution derive from any recoveries" related to litigating those Non-Estate Claims. (Dkt. No. 67).

24. As defined by the Order Confirming the Meridian Chapter 11 plan, "Non-Estate Claims" include "any cause of action held by individual Investors arising from any matter regarding the Debtors," among them being MMIF II, including causes of action against "all Persons that provided services to the Debtors, including, without limitation, the Debtors' attorneys, accountants, auditors, bankers and financial advisors…." Non-Estate Claims do not, however, include "claims or causes of action against financial advisors retained by the individual investors." (Dkt. No. 65).

25. On March 14, 2012, the Rockhills agreed to assign their Non-Estate Claims to the Trustee.

26. On October 15, 2012, in granting in part Defendants' Motion for Summary Judgment, the Court ruled that, because the Rockhills assigned their Non-Estate Claims to the Trustee, all of their claims had been assigned to the Trustee, except those against a financial advisor retained by the Rockhills.

27. The actions of Jeude and Univest were not actions as a financial advisor to the Rockhills.

28. Neither Univest nor Jeude was ever retained by the Rockhills to act as their financial advisor.

29. The Rockhills never paid Univest or Jeude for advice as a financial advisor.

30. The only compensation received by Jeude and/or Univest in connection with the Rockhills' investment in MMIF II was sales commissions paid by the investment issuers.

31. In August 2005, Rockhill retained an investment advisory service, 1st Global Advisors, Inc. ("1st Global"), to advise him on his investments.

32. Rockhill gave discretionary trading authority to Timothy Wellings, an investment advisor affiliated with 1st Global.

33. Wellings and 1st Global remained Rockhill's investment advisor until at least 2011, after the Rockhills invested in MMIF II. Rockhill paid 1st Global a 1.5% annual management fee for their services as his financial advisor.

34. Wellings advised Rockhill against investing in MMIF II.

**II. CONCLUSIONS OF LAW**

1. Jeude and/or Univest were not acting as the Rockhills' financial advisors and were never retained to act as their financial advisors.

2. The Rockhills did not rely on Jeude and/or Univest as a financial advisor in

deciding whether to invest in MMIF II.

3. The Rockhills assigned all of their claims to the Trustee when they assigned their Non-Estate Claims on March 14, 2012.

4. Judgment shall be entered dismissing the Rockhills' claims against Jeude and Univest with prejudice.

5. Any Conclusion of Law denominated as a Finding of Fact shall be deemed a Conclusion of Law and any Finding of Fact denominated as a Conclusion of Law shall be deemed a Finding of Fact.

IT IS SO ORDERED.

Dated this 6th day of May, 2013.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge